**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

THOMAS C. GLASS,
              Appellant,

        v.

DEPARTMENT OF THE TREASURY,
              Agency.

DOCKET NUMBER
NY-0752-19-0200-I-1

DATE: August 16, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Christopher J. Keeven, Esquire, and Michael Joseph Sgarlat, II, Esquire, Washington, D.C., for the appellant.

Gabriel A. Hindin and Ashley W. Walker, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which sustained his reduction in grade. For the reasons discussed below, we GRANT the appellant's petition for review and REVERSE the initial decision. The agency's action is REVERSED.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## BACKGROUND

¶2      The appellant served as a Supervisory National Bank Examiner, Level VII, with the agency's New York City office.  On March 22, 2019, the Examiner-in-Charge for Citibank proposed the appellant's reduction in pay and grade to National Bank Examiner, Level VI, based on five specifications of conduct unbecoming a supervisor and three specifications of failure to follow established policies and procedures.[2]  Initial Appeal File (IAF), Tab 9 at 110.  The conduct unbecoming specifications consisted of five instances wherein the agency alleged that the appellant engaged in inappropriate conduct with three of his direct reports and a subordinate regarding work-related matters.

¶3      Following the appellant's oral and written replies, IAF, Tab 6 at 41, 46, on May 24, 2019, the Deputy Comptroller for Large Banks issued a decision letter in which he found all five specifications of charge 1, and the charge itself, sustained.  *Id.* at 35.  He did not sustain charge 2.  Nonetheless, he determined that the proposed penalty was appropriate, and the appellant was reduced to a lower grade, effective July 7, 2019.[3]  IAF, Tab 6 at 27.  The appellant filed an appeal with the Board.  IAF, Tab 1.

¶4      Following the requested hearing, the administrative judge, in her initial decision, found all five specifications of the charge, and the charge itself, sustained.  IAF, Tab 37, Initial Decision (ID) at 4-8.  She considered, but found

---

[2] The agency had previously proposed the identical action against the appellant, with the same charges and specifications.  The same deciding official sustained the proposal in its entirety and the appellant was reduced in grade, effective August 5, 2018.  He filed a Board appeal, and during adjudication, the agency rescinded the action and moved for dismissal.  With the appellant's agreement, the administrative judge dismissed the appeal as moot.  *Glass v. Department of the Treasury*, MSPB Docket No. NY-0752-18-0183-I-1, Initial Decision (Jan. 31, 2019).  That decision became the Board's final decision on March 7, 2019.  The agency proposed the instant action two weeks later.

[3] It is unclear whether the appellant suffered a reduction in pay.  IAF, Tab 6 at 27.  The agency states that he did not, Petition for Review File, Tab 3 at 6, and the appellant has not challenged that assertion.

unsupported, the appellant's claim that the agency denied him due process when it posted a vacancy announcement for his former position after issuance of the first proposal notice. ID at 8-9. The administrative judge found that the agency's action promotes the efficiency of the service, ID at 9, and that reduction in grade is a reasonable penalty for the sustained charge. ID at 9-11. Accordingly, she affirmed the action. ID at 1, 11.

¶5      The appellant has filed a petition for review, Petition for Review (PFR) File, Tab 1, the agency has responded, PFR File, Tab 3, and the appellant has replied. PFR File, Tab 4.

## ANALYSIS

¶6      An agency may take an action under 5 U.S.C. chapter 75 against an employee "only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a). "Cause" generally connotes some specific act or omission on the part of the employee that warrants disciplinary action, and an agency action that does not set forth actionable misconduct cannot be sustained. *Gonzalez v. Department of Homeland Security,* 114 M.S.P.R. 318, ¶ 10 (2010); *see Wilson v. Department of Justice*, 66 M.S.P.R. 287, 297 (1995) ("Regardless of whether the charged misconduct actually occurred, we agree with the administrative judge's finding that the charged misconduct is not actionable."); *Ray v. Department of the Army*, 97 M.S.P.R. 101, ¶ 54 (2004) (finding no basis to disturb the administrative judge's conclusion that the charged conduct did not constitute actionable misconduct), *aff'd,* 176 F. App'x 110 (Fed. Cir. 2006).

¶7      The appellant in this case was a supervisor and the agency identifies the four employees mentioned in the specifications as either his direct reports or otherwise his subordinate. IAF, Tab 6 at 10-11. The specifications all relate to the manner in which the appellant dealt with these individuals regarding work-related matters.

¶8        In specification (1), the agency alleged that the appellant called one of his direct reports, P.B., a liar.  IAF, Tab 9 at 110.  In what is described as "Background" to this specification, the agency stated that, during a group meeting with visiting examiners in November 2016, the appellant asked P.B. about his reporting on information that he had reviewed related to a specific monthly report; that the appellant addressed P.B. in a scolding manner, questioning which of P.B.'s two statements, that he had been reviewing the reports or that he had not been reviewing the reports, was true; and that the appellant told P.B. that his explanation was not a good excuse and that he was ill-prepared for the meeting. The agency did not allege that the events at the November meeting constituted misconduct but alleged in the first specification that during a December meeting the appellant called P.B. a liar.  The statement occurred during P.B.'s annual performance review.  In sustaining this specification, the administrative judge found that the appellant behaved in a manner unbecoming a supervisor.  ID at 5.

¶9        Even taking the agency's version of this incident as accurate,[4] the fact remains that the appellant was discussing his direct report's performance with him, and, in that discussion, the appellant indicated that he believed that P.B. had not been truthful when, during the earlier meeting, he indicated both that he had, and had not, been reviewing the monthly reports.  The appellant was correct that it is impossible for both of P.B.'s statements to have been truthful.  It is the job of a supervisor to address the performance of his subordinates and the making of inaccurate or false statements about a work-related matter is serious.  Although the appellant's language may have been direct or indelicate, that does not make his conduct actionable.  *See Ray*, 97 M.S.P.R. 101, ¶ 54 (finding that, while statements the appellant made to a subordinate regarding matters within his area

---

[4] According to the appellant, during their discussion, P.B. first asked if the appellant was calling him a liar, to which the appellant replied "Yes, if you prefer that word." IAF, Tab 7 at 87 (the appellant's deposition).  Regardless of who first used the word "liar," the conduct does not equate to actionable misconduct.

of responsibility may have been indelicately worded, there is no evidence that the appellant's opinion was malicious or offered in bad faith). For these reasons, the conduct charged in specification (1) is not actionable.

¶10    In specification (2), the agency alleged that, on January 2, 2017, the appellant was having a discussion with another of his direct reports, Bank Examiner E.S., in which the appellant sought to clarify how many of a particular type of work item there were pending, and that when E.S. appeared not to understand his question, the appellant held up one finger from each hand in her face and said, loudly enough so that others could hear, words to the effect of "Here's one finger and here's one finger. How many fingers?" IAF, Tab 9 at 10. In E.S.'s written statement, she indicated that other staff members overheard the appellant. *Id.* at 31. In sustaining this specification, the administrative judge found that the appellant behaved in a manner that was disrespectful and that caused E.S. to feel intimidated and embarrassed. ID at 5-6.

¶11    Again, even taking the agency's version of the incident as accurate,[5] it remains true that the appellant was seeking information from a direct report about a work-related matter, as is within a supervisor's responsibilities to do. That is so regardless of whether the appellant's statement made E.S. feel uncomfortable.[6] To the extent that the appellant's reaction to E.S. may have been exaggerated, it still does not constitute actionable misconduct. *See Ray*, 97 M.S.P.R. 101, ¶ 54.

---

[5] According to the appellant, he was two to three feet away from E.S., he was not yelling, agitated, or angry, IAF, Tab 7 at 105, and, based on the setup of the work space, it was unlikely that anyone overheard the conversation. *Id.* at 105-06. He also stated that P.M.'s "cube" was next to the appellant's. *Id.* at 106. The parties stipulated, however, that, although P.M. was sitting at his desk, adjacent to E.S.'s work station, at the time of the conversation, he had no recollection of it. IAF, Tab 30.

[6] A supervisor checking on the status of a work project, holding an employee accountable for timely completing work, reviewing the quality of an employee's work, and generally exercising supervisory authority over an employee can sometimes make the employee angry, uncomfortable, frustrated, or embarrassed. The employee's reaction to that sort of supervisory oversight does not make the supervisor's conduct improper.

¶12       In specification (3), the agency alleged that, on February 6, 2017, during another conversation, E.S. asked the appellant a question about a work project to which he responded, "We have talked about this five times!" IAF, Tab 9 at 111. Although the parties generally agree as to what the appellant said, they disagree about whether the question had previously been addressed.[7] In sustaining this specification, the AJ found that the appellant made it obvious to E.S. that he was annoyed and angry because of her question, and that he did not behave in a tactful manner but rather in a way that was unbecoming a supervisor. ID at 6.

¶13       Even taking the agency's version of the incident as accurate, E.S.'s question to the appellant, to whom she reported, concerned a work-related matter and his response to her was in the context of his supervisory role. That is so even if the appellant's response made E.S. feel afraid to ask further questions of him, as she claimed. IAF, Tab 9 at 132. To the extent that the appellant's response reflected that he was frustrated by the question, it does not amount to actionable misconduct. *See Ray*, 97 M.S.P.R. 101, ¶ 54.

¶14       In specification (4), the agency alleged that, between January and February 2017, the appellant asked R.T., a subordinate, to schedule a meeting to include him, the proposing official, and a member of bank management, and that, after R.T. made several attempts to confirm the appellant's attendance, he responded to her to the effect that "I told you this three times. We have to go over this again?" IAF, Tab 9 at 111. Although the parties generally agree as to what the appellant said, they disagree about his tone.[8] In sustaining this specification, the administrative judge found that the appellant was annoyed and

[7] In her written statement, E.S. said that she did not recall having previously talked about the matter at issue. IAF, Tab 9 at 132. During his deposition, the appellant stated that the question E.S. asked was a simple one that she had repeatedly asked over a period of days. IAF, Tab 7 at 108.

[8] In her written statement, R.T. stated that the appellant raised his voice. IAF, Tab 9 at 134. In his deposition, the appellant stated that he was merely "questioning" inasmuch as the matter had already been addressed and resolved. IAF, Tab 7 at 126.

impatient and made his feelings known to R.T., and that he did not behave in a tactful manner but rather in a way that was unbecoming to a supervisor. ID at 7.

¶15    Even crediting the agency's version of the incident as accurate, the discussion between the appellant and his subordinate concerned the scheduling of a meeting which is a work-related matter and, in addressing her, the appellant was acting within the scope of his responsibilities. That is so even though R.T. may have felt belittled as she claimed. IAF, Tab 7 at 134. To the extent the appellant's response may have reflected that he was annoyed, it did not amount to actionable misconduct.

¶16    In specification (5), the agency alleged that, in an email exchange on May 5, 2016, to L.S., one of the appellant's direct reports, he told her to henceforth submit her questions either to him or another named individual, and to "PLEASE stop emailing" C.L. IAF, Tab 9 at 111. The parties do not disagree as to the content of the email, a copy of which is in the record. *Id.* at 139. In sustaining this specification, the administrative judge found that the tone of the appellant's email indicated that he was annoyed and that he should have understood that his email could have been construed that way. ID at 9.

¶17    It is within a supervisor's responsibility to direct who should be provided certain information and to whom questions should be addressed. Putting a written word in all capital letters is generally intended to draw the reader's attention to it. To the extent that R.T. found the appellant's email "belitting [sic]" and indicated that she felt that she had been "beaten up" by it, IAF, Tab 16 at 41, those feelings cannot serve to turn the appellant's email into actionable misconduct.

¶18    In sum, none of the five specifications that make up the charge constitute actionable misconduct and, therefore, the sole charge supporting the agency's action cannot be sustained.[9] On this basis, the initial decision is reversed, and the

---

[9] We do not suggest that a supervisor's conduct may never be actionable and therefore supportive of discipline, but only that the appellant's conduct in this case does not rise to that level.

agency's action is reversed as well. Because the agency has failed to allege or prove that there is "cause" for action, the Board's inquiry stops and no other claims need be reached.[10] *Gonzalez*, 114 M.S.P.R. 318, ¶ 25; *Ray*, 97 M.S.P.R. 101, ¶ 54; *Wilson*, 66 M.S.P.R. at 297.

## ORDER

¶19     We ORDER the agency to cancel the appellant's reduction in grade and restore him to his supervisory position, effective July 7, 2019. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶20     We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶21     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶22     No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant

---

[10] Based on this disposition, the Board need not consider the appellant's claims that the administrative judge failed to make credibility findings or address his due process argument, and did not properly determine the reasonableness of the penalty. PFR File, Tab 1 at 11, 14-23, 23-25.

believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶23    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

**NOTICE OF APPEAL RIGHTS[11]**

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2)** **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the

EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12]  The court of appeals must <u>receive</u> your

---

[12]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on

petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:         /s/ for

                 Jennifer Everling
                 Acting Clerk of the Board

Washington, D.C.



# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.